﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/21 Archive Date: 04/30/21

DOCKET NO. 201120-129225
DATE: April 30, 2021

ORDER

Entitlement to an initial rating of 60 percent, but not higher, for heart condition, to include ischemic heart disease, is granted. 

FINDINGS OF FACT

1. The Veteran’s service-connected heart disability is manifest by fatigue at A workload of greater than 3 to 5 metabolic equivalents. 

2. Metabolic equivalent (MET) testing shows the Veteran did not develop dyspnea, fatigue, angina, dizziness, or syncope at a workload of 3 METs or less, and the evidence did not show chronic congestive heart failure or left ventricular dysfunction with an ejection fraction of less than 30 percent.

CONCLUSIONS OF LAW

1. The criteria for an initial rating of 60 percent for service-connected heart condition, to include ischemic heart disease, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.100, 4.104, Diagnostic Code 7005.

2. The criteria for a rating in excess of 60 percent for service-connected heart condition, to include ischemic heart disease, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.100, 4.104, Diagnostic Code 7005.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1965 to January 1969.

1. Entitlement to an initial rating of 60 percent, but not higher for, heart condition, to include ischemic heart disease

The Veteran contends he is entitled to a compensable rating for his service-connected heart condition. 

As a matter of history, in a May 2019 decision the Board granted service connection for ischemic heart disease. In a November 2019 decision, the Agency of Original Jurisdiction (AOJ) implemented the Board’s decision, and recharacterized ischemic heart disease (IHD) as “heart condition (diagnosed as atrial flutter and systolic heart failure)”, and assigned a noncompensable rating effective January 14, 2014. In assigning a noncompensable rating, the AOJ found the Veteran did not have IHD. “As you do not have any symptoms or a confirmed 

 

diagnosis of ischemic heart disease, service connection is granted with an evaluation of 0 percent”. See November 2019 rating decision. The AOJ relied on a September 2019 examination report. 

The September 2019 examiner cited an April 2015 VA examination report that found the Veteran had IHD, but found the April 2015 examination to be inadequate because of apparent conflicting findings regarding the existence of arrythmia. a

The Veteran’s service-connected heart condition is currently assigned a noncompensable rating (zero percent) pursuant to 38 C.F.R. §§ 4.104 (Diagnostic Code 7005), 4.31.

Diagnostic Code 7005 provides for a 10 percent evaluation for a workload greater than 7 METs but not greater than 10 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; continuous medication required.

A 30 percent evaluation is warranted for a workload of greater than 5 METs but not greater than 7 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope; or evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray.

A 60 percent evaluation is warranted for more than one episode of acute congestive heart failure in the past year, or workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent.

A 100 percent rating is warranted for chronic congestive heart failure, or when a workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. 38 C.F.R. § 4.104, Diagnostic Code 7005.

A note prior to the Diagnostic Code explains that one MET is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note (2).

For the purposes of a 60 percent evaluation, the rating criteria do not require a separate showing of left ventricular dysfunction in addition to an ejection fraction of 30 to 50 percent. Otero-Castro v. Principi, 16 Vet. App. 375, 382 (2002). Additionally, the phrase “30 to 50 percent” means 30 percent through 50 percent. Id. at 380.

For the purposes of a 100 percent evaluation, the rating criteria do not require a separate showing of left ventricular dysfunction in addition to an ejection fraction of less than 30 percent. See id. at 382.

ii. Facts and Analysis

A review of the record reveals relevant VA examination reports, a February 2016 stress test, and multiple ejection fraction findings.

A May 19, 2015 VA treatment record notes the Veteran had a previously determined ejection fraction greater than 40 percent, but doesn’t specify the actual finding. However, the most recent finding in the Veteran’s treatment records prior to that date was from February 2013 with an ejection fraction of 45 to 50 percent. See July 16, 2013 VA treatment record. Subsequent treatment records show ejection fraction findings were 55 to 60 percent. See February 12, 2016 and August 20, 2018 VA treatment records.

The Veteran participated in a treadmill stress test in February 2016. Exercise tolerance was normal and primarily limited by fatigue. No METs level was reported. However, a nurse anesthetist reviewed these, along with other findings, and noted a METS of greater than 4. It is unclear if this was based on review of stress test findings or an interview of the Veteran, as the nurse merely wrote the Veteran actively exercises. See April 24, 2017 VA treatment record (“Functional status: >4 mets. actively exercises”); see also May 22, 2017 VA treatment record (another treatment provider noting a METs level of greater than 4). 

The Veteran attended heart conditions examinations in April 2015 and September 2019. The April 2015 examiner noted hypokinesia of the septum and a left ventricular ejection fraction of 53 percent were found by an echocardiogram performed in conjunction with the examination. The examiner diagnosed ischemic heart disease based on the hypokinesia finding. The Board notes the echocardiogram report also listed myocardial infarction as an indication, and treatment records reveal mild global hypokinesis of the left ventricle was found in February 2013. An interview based METs test was performed during the examination and the examiner noted dyspnea and fatigue at a workload of greater than 3 to 5 METs, which was all attributed solely to the Veteran’s heart condition(s). See April 2015 examination report, pages 6-7.

Upon examination in September 2019, left ventricular ejection fraction was 55 percent. An interview based METs test was performed and the examiner noted fatigue at a workload of greater than 5 to 7 METs. 

Although the September 2019 examiner attributed the METs level to heart conditions, the Board considers the Veteran to have ischemic heart disease. Furthermore, the AOJ has has instead recharacterized the Veteran’s disability broadly as “heart condition” while parenthetically citing two diagnoses found in the Veteran’s treatment records, which were notably not diagnosed by either the 2014 or 2019 examiners. By recharacterizing a service-connected disease or injury so generally, the AOJ has allowed for consideration of disease beyond ischemic heart disease. Therefore, even if the Board were to agree that ischemic heart disease does not exist anymore, the AOJ has expanded the scope of the claim and may not now rely on finding a lack of ischemic heart disease in assigning a noncompensable rating.

When considering the evidence of record, and resolving doubt in favor of the Veteran, the Board finds a 60 percent rating is warranted throughout the period at issue. Left ventricular ejection fraction testing in the year prior to service connection is consistent with a 60 percent rating as it was 45 to 50 percent. Although subsequent ejection fractions were higher, METs levels provided by the April 2015 examiner and treatment providers are consistent with between greater than 3 and 5. On the VA examination reports it is noted that greater than 3 to 5 METs is consistent with brisk walking, 4 miles per hour, and an August 2018 treatment records notes “METS - walks independently; walks 4 miles per day.” See August 21, 2018 VA treatment record. Only the September 2019 examiner found a higher METs level. The Board resolves doubt in favor of the Veteran and finds an initial 60 percent rating is warranted throughout the period on appeal. 

A higher 100 percent rating is not warranted unless there is chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. The preponderance of the evidence of record is against finding that any of these requirements are met. Although treatment records indicate a history of chronic systolic heart failure, heart failure was found to be have been entered in error. See May 19, 2015 VA treatment record. Furthermore, testing has not revealed METs workloads or ejection fractions at the levels required for a 100 percent rating. Thus, the Board concludes that the Veteran’s service-connected heart condition did not meet the criteria corresponding to a higher 100 percent rating.

 

In reaching this determination, we stress that the AOJ elected to change the grant of service connection from Ischemic Heart Disease to Heart Condition. There are consequences to how a disorder is characterized and we have rated the “heart condition” as appropriate. We make no further comment in regard to the determination of the AOJ to not actually implement the grant of service connection as directed by the Board.

 

 

H. N. SCHWARTZ

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Gregory T. Shannon, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.